IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHINA LIFE INSURANCE COMPANY, as assignee of; <br><br> Plaintiff, <br><br> vs. <br><br> BABY TREND, INC., <br><br> Defendant. | 8:18CV213 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on defendant's, Baby Trend, Inc.'s ("Baby Trend"), motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), Filing No. 50. Plaintiff China Life Insurance Company ("China Life") brought this action for express indemnification, implied or equitable indemnification, and breach of contract. Baby Trend crossclaims with two separate breach of contract claims. Complaint, Filing No. 1.

I.  **BACKGROUND**

The issues in this case stem from a previously settled dispute in this Court.[1] China Life is the assignee of a group of companies, including Lerado Group Co., Ltd., Lerado Group (Holding) Company, Ltd., Lerado (Zhong Shan) Industrial Co., Ltd., Lerado China Limited, and Lerado H.K. Limited ("Lerado"). Lerado is a manufacturer of infant products. Laredo produces their products in China but sells throughout the world, including in the United States. China Life insured the Lerado group during all times relevant to this litigation.

Baby Trend is a California corporation doing business across the United States, including the state of Nebraska. Baby Trend and Laredo entered into an OPP Car Seat

---
[1] *Ribeiro et al. v. Lerado et al.*, Case No. 12-CV-00204-JFB-FG3 filed in this Court on June 13, 2012

1

Production Agreement (the "agreement").  The agreement dictated that Laredo would manufacture car seats using Baby Trend's designs and specifications.  This agreement controlled all dealings between Laredo and Baby Trend with regard to baby seat production.  The contract provides no information as to what state's law would control or where the contract was entered into.

The relevant language of the agreement is as follows: "Baby Trend acknowledges that all design work was performed by Baby Trend, and accordingly, Baby Trend agrees to hold Lerado harmless for any design defects."  Filing No. 52-2 at 2.  China Life alleges this provision is an indemnification clause.  The parties do not agree as to whether the Ribeiro litigation stemmed from a product defect or design defect.  Laredo alleges they manufactured all baby seats under the specifications provided exclusively by Baby Trend.  Baby Trend's witnesses and designer testified during the Ribeiro litigation that the car seat was manufactured consistent with Baby Trend's design.

The previous litigation resulted in a private settlement with all parties, including Laredo and Baby Trend.  Beginning September 18, 2014, Laredo tried three times to request a defense and indemnification from Baby Trend and their insurer.  Each of those requests was allegedly ignored or denied.  Both parties allege they incurred significant costs defending the *Ribeiro* litigation, including attorney's fees, costs of expert witnesses, and settling the claim.

Baby Trend's counterclaims against China Life for breach of contract are based on the following language contained therein: "Lerado hereby agrees to reimburse Baby Trend for any and all expenses incurred by Baby Trend as a result of production defects

2

in the product or components thereof, and to name Baby Trend, Inc. as an additional insured with Lerado's liability insurance." Filing No. 35, ¶ 16, at 17.

## II. STANDARD OF REVIEW

### a. Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c)

As a general rule, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). When reviewing a Rule 12(c) motion, the Court must view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008). Judgment on the pleadings is appropriate when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009); *Poehl*, 528 F.3d at 1096.

### b. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007); *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the

complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In deciding a motion to dismiss under Rule 12(b)(6), a court must accept the allegations contained in the complaint as true and draw reasonable inferences in favor of the nonmoving party. *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010). Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Courts follow a "two-pronged approach" to evaluate Rule 12(b)(6) challenges. *Iqbal*, 556 U.S. at 679. First, a court divides the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id.* Second, the factual allegations must be parsed for facial plausibility. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677. The Court should not "incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012). The question at this preliminary stage is not whether a plaintiff might be able to prove its claim, but whether it has "adequately asserted facts (as contrasted with naked legal conclusions) to support" those claims. *Id.*

The court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 558, 556. When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under

Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679. Dismissal under Rule 12(b)(6) is appropriate only if it is clear that no relief can be granted under any set of facts that could be proven consistent with the allegations. *O'Neal v. State Farm Fire & Cas. Co.*, 630 F.3d 1075, 1077 (8th Cir. 2011).

**DISCUSSION**

1. Review Under Fed. R. Civ. P. 12(c)

The Court will first make a determination as to whether this is a review under Fed. R. Civ. P. 12(c) or 12(b)(6). Baby Trend attached two documents to its motion for judgment on the pleadings, the production agreement between Baby Trend and Laredo (Agreement, Filing No. 52-2) and the seventh amended complaint from the previous litigation (*Riberio* Complaint, 12cv204, Filing No. 52-3). China Life alleges that the contract and district court decision attached to Baby Trend's Rule 12(c) motion for judgment on the pleadings converts the present motion to a motion for summary judgment, pursuant to Rule 12(d). China Life Opposition Brief, Filing No. 53, at 1-2. Baby Trend alleges the documents are embraced by the pleadings, and therefore should be considered under Rule 12(c). Baby Trend Reply Brief, Filing No. 54, at 1-2.

Generally, matters outside of the pleadings "may not be considered in deciding a Rule 12 motion to dismiss," unless the matters are embraced by the complaint. *Zean v. Fairview Health Services,* 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Enervations, Inc. v. Minn. Min. & Mfg. Co.,* 380 F.3d 1066, 1069 (8th Cir. 2004)). Items of public record may be considered without "converting the motion into one for summary judgment." *Id.* (*quoting Miller v. Redwood Toxicology Lab, Inc.,* 688 F.3d 928, 931 n.3 (8th Cir. 2012)). Further, "[i]n a case involving a contract, the court may examine the contract documents

5

in deciding a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

As to the OPP Car Seat Production Agreement, the Court is persuaded by Baby Trend's argument[2] that these documents are (1) embraced by the pleadings, and (2) because one document is the contract in question while the other is a public document. Although the parties disagree as to the meaning of the clauses at issue, there is no disagreement on the specific language of the agreement. Therefore, this motion is properly considered under Rule 12(c) and will not be converted to a motion for summary judgment pursuant to Rule 12(d).

2. Choice of Law Analysis

The parties argue that a discussion of the merits of this motion begins with a choice of law analysis. The contract contains no choice of law provision and provides no information on the place of negotiation or signing. Baby Trend contends California law applies. China Life does not concede Baby Trend's argument but asserts there is no difference between California and Nebraska law.

A federal court sitting in diversity applies the forum state's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *DCS Sanitation Management, Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir. 2006). The Nebraska Supreme Court has held, "that before entangling itself in messy issues of conflict of laws, a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *American National Bank v. Medved,* 281 Neb. 799, 801, 808, 801

---

[2] Baby Trend argues that the first disputed clause of the agreement to hold harmless does not require reimbursement of funds or indemnity; and the second disputed clause requires reimbursement to Baby Trend of the costs it incurred as a result of the product defect allegations set forth in the *Ribiero* litigation.

6

N.W.2d 230, 238 (2011) (footnote omitted). The first question in a choice of law analysis is whether an actual conflict exists. *Id.* "An actual conflict exists when a legal issue is resolved differently under the law of two states." *Id.*

It is unclear to the Court at this point whether California or Nebraska law will ultimately apply. The Court has no facts before it as to where the contract was written, who wrote it, or what law was intended to apply. However, plaintiff argues that the Court will reach the same issue regardless of whether it applies Nebraska or California law on any of these issues. For example, the Eighth Circuit, applying Missouri law, has used the terms "indemnity" and "hold harmless" interchangeably. *Praetorian Ins. Co. v. Site Inspection, LLC*, 604 F.3d 509, 515 (8th Cir. 2010). "An indemnity agreement is to be interpreted according to the language and contents of the contract as well as the intention of the parties as indicated by the contract." *Myers Building Indus., Ltd. V. Interface Technologies, Inc.*, 17 Cal. Rptr. 2d 242 (Cal. Ct. App. 1993). *See* Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contract, so far as the same is ascertainable and lawful."). "An indemnity obligation arises from two general sources. First, it may arise from 'express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances.'" *Maryland Casualty Co. v. Bailey & Sons, Inc.*, 41 Cal. Rptr. 2d 519 (Cal. Ct. App. 1995) (quoting *E.L. White, Inc. v. City of Huntington Beach*, 579 P.2d 505 (Cal. 1978)). The Court cannot determine, until further facts are established, whether there is an actual conflict of laws between the two states. However, the Court will proceed as though a conflict exists for purposes of this motion.

When an actual conflict exists, Nebraska caselaw dictates the state with the most significant relationship to the transaction will control in contract disputes. *In re Estate of Greb*, 288 Neb. 362, 376, 848 N.W.2d 611, 622 (2014). Following the significant contacts approach, the factors to consider include: (1) the place of contracting; (2) the place of contract negotiations; (3) the place of performance; (4) the location of the subject matter; and (5) the domicile, headquarters, or place of incorporation of the parties. *Powell v. American Charter Federal Savings & Loan,* 514 N.W.2d 326, 331-32 (Neb. 1994) (citing *Restatement (Second) of Conflict of Laws,* § 188 (1971)).

For purposes of this motion, based on the evidence before the Court, the state with the most significant contacts to the underlying litigation is Nebraska. First, the issues in this case are the result of prior litigation which took place in Nebraska. The breach of contracts alleged by China Life in this case are the result of litigation in Nebraska in the *Riberio* case. The costs of the expert witnesses' fees that Baby Trend is attempting to recoup from China Life relates to *Riberio* litigation in Nebraska. The accident occurred in Nebraska. Baby Trend agrees that while it is a California corporation, it has done business in Nebraska. Products manufactured by China Life's insured on behalf of Baby Trend entered the stream of commerce in Nebraska. The only significant contact pled by Baby Trend is their incorporation with the State of California. The record is silent as to its principal place of doing business. In weighing these interests, the Court finds that the applicable law to be applied in the present litigation, based on the evidence before the Court to date and the motion to dismiss, is that of the State of Nebraska.

### 3. Contract Interpretation Under Nebraska Law

#### a. Express Indemnification and Breach of Contract (Counts I and III)

"The interpretation of a contract and whether the contract is ambiguous are questions of law." *Timberlake v. Douglas County,* 291 Neb. 387, 392, 865 N.W.2d 788, 793 (2015) (citing *David Fiala Ltd. v. Harrison*, 290 Neb. 418, 860 N.W.2d 391 (2015)). An ambiguous contract is one where "a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meaning." *Gibbons Ranches L.L.C. v. Bailey,* 289 Neb. 949, 857 N.W.2d 808 (2015). "A court tries to give meaning to all portions of a written contract in order to avoid an interpretation that would render material provisions meaningless." *Timberlake v. Douglas County,* 291 Neb. 387, 392, 865 N.W.2d 788, 793 (2015). "If a particular contract interpretation renders a material provision meaningless, that construction is inconsistent with the parties' intent." *Id.* The contract is not automatically deemed ambiguous if parties to a dispute suggest alternate meanings. *Gibbons Ranches L.L.C. v. Bailey,* 289 Neb. 949, 857 N.W.2d 808 (2015) (quoting *Bedore v. Ranch Oil Co.,* 282 Neb. 583, 805 N.W.2d 68 (2011)).

Indemnity agreements should be construed in the same manner as general contract construction or interpretation rules. *Jacobs Engineering Group Inc. v. ConAgra Foods, Inc,* 301 Neb 38, 66, 917 N.W.2d 435, 458 (2018). "The evidence is overwhelming that indemnity and hold harmless are perfectly synonymous."  Bryan *A. Garner, INDEMNIFY*, 15 GreenBag 2d 17 (Autumn 2011). According to Garner, the majority rule of state courts has held indemnify and hold harmless are a "unitary phrase that means nothing more than indemnify alone." *Id.,* mentioning *Brentnal v. Holmes,* 1 Root (Conn.) 291, 1 Am. Dec. 44 (1791); *Long v. McAllister-Long*, 221 S.W.3d 1, 10 (Tenn Ct. App.

9

2006); *Loscher v. Hudson*, 182 P.3d 25, 33 (Kan. Ct. App. 2008); *Majkowski v. American Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 588 (Del. Ch. 2006). Black's Law Dictionary defines "hold harmless" as "to absolve (another party from any responsibility for damage or other liability arising from the transaction." Hold Harmless Definition, *Black's Law Dictionary* (11th ed. 2019). Further, the definition of "Hold Harmless" cites to "Indemnity" and vice versa. *Id.;* Indemnity Definition, *Black's Law Dictionary* (11th ed. 2019).

Count I of the complaint alleges that Baby Trend expressly agreed to "hold Lerado harmless for any design defects." Filing No. 1, ¶ 45. Count III alleges that Baby Trend "failed to hold plaintiffs harmless" for any design defect. *Id.* at ¶ 59.

In the Court's reading of Nebraska caselaw, it does not appear Nebraska has specifically addressed whether "hold harmless" has a meaning separate from indemnity. *See e.g., Kuhn v. Wells Fargo Bank of Nebraska*, 278 Neb. 428 (2009) (where the Court interchanges "indemnity" and "hold harmless"). But the Court need not reach that determination today. The Court has already mentioned the need for development of factual issues regarding the conflict of laws. Facts must also be developed with regard to the intent of the indemnification/hold harmless agreement, whether evidence other than the plain language of the agreement will be admissible, and so forth. The Court will also expect adequate briefing on the legal issues of whether this indemnity/hold harmless cause is sufficient as a matter of law. The words used in this indemnity/hold harmless clause are few, and the usual more detailed language used in an indemnity/hold harmless agreement are not part of the contract. Though it may not be significant, it must be addressed prior to the Court's ruling on the clauses in question in this case. The Court requires more evidence in this regard, including the drafter of the agreement, the place

of drafting, and the parties involved and possibly evidence as to intent. These and other issues must be addressed at the summary judgment stage before the Court can fully rule on the claims in this case as well as all related issues.

*b. Implied or equitable Indemnification (Count II)*

Baby Trend's basic argument here is that if China Life relies on express indemnity, it cannot also rely on implied indemnity. However, the Court finds that plaintiff is entitled to plead alternative theories of recovery. Fed. R. Civ. P. 8(d) (2) and (3).

**CONCLUSION**

The Court finds that the language as plead in the complaint in conjunction with the agreement is sufficient to meet the requirements of Fed. R. Civ. P. 12(c). The Court agrees that there are both factual and legal issues here that cannot currently be resolved on the pleadings. The motion for judgment on the pleadings is denied. However, if at the summary judgment stage of this case, one or both parties want to revisit any of these rulings, they are free to do so.

THEREFORE, IT IS ORDERED THAT defendant's motion for judgment on the pleadings, Filing No. 50, is denied.

Dated this 24th day of April, 2020.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

11